THE plaintiffs, in right of settlement, clamed the land in controversy, lying in the county Ohio.
*They stated in their bill that they had located on this land a military warrant, no proof of the warrant and entry with the surveyor for the purpose of locating it appeareth; but the grants to-them, hereinafter mentioned, are proof of this warrant or of some other legal warrant, because, otherwise, those grants could not regularly have issued.
David Rogers, in 177S, located a military warrant partly on the lands clamed by the plaintiffs, and at that time in their possession, and partly on land then clamed by *167 the defendent David Jones, in right of settlement, or in character of agent for the indiana company, and procured a survey of them, with other lands adjacent, the sum of all which quantities was 1193 acres, to be made and certified by the proper officer.
The plaintiffs exhibited their clames before the special court of commissioners, constituted by statute of may session, 1779, who, on the 19 day of february following, affirmed the right of the plaintiff Joseph Tomlinson; but do not appear to have given sentence on the clame of the other plaintiff, they postponed it at their first meeting, as he suggested, because the defendent Mary, who clamed the land in controversy by devise in the testament of David Rogers then dead, did not attend, and they declined any further consideration of it, at a subsequent meeting, because they thought the matter transferred to another tribunal by the caveat after mentioned, but these proceedings before the court of commissioners seem unimportant, unless it be to shew that the plaintiffs persisted in endeavoring to assert the rights which they clamed.
The plaintiff Joseph Tomlinson, however, is supposed to have believed his right secured by the adjudication in affirmance of it by the court of commissioners; for he did not unite with the other plaintiff in a caveat which he entered against emanation of a grant upon the survey made for David Rogers.
The plaintiff Isaac Williams stated, that counsil was retained and instructed to prosecute the caveat; but that subpoenas, which were sent by the council, for sum-monning witnesses to support objections against the grant, not having come to him in due time, which is supposed to have happened from the distance between Ohio, the place of his residence, and Richmond, where the counsil resided, the caveat was dismissed.
After dismission of the caveat, a grant to the defendents John Jeremiah Jacob and Mary his wife of the land surveyed for David Rogers, dated the first day of april, 1784, passed the seal.
The plaintiffs obtained grants also of the lands which they clamed, but the operation of. those grants, as conveyances of legal titles, the dates of them being, one in 178S, and two others *in 1787, was hindered by the anterior grant to John Jeremiah Jacob and Mary his wife.
To remove this impediment to the benefit of their grants the plaintiffjs filed their bill in the high court of chancery praying that those defendents might be decreed to convey to the plaintiffs so much as they claimed of the lands granted to the representatives of David Rogers.
The defendents John Jeremiah Jacob and Mary his wife, by their answer insisting that David Rogers had the right, by settlement, prior to the settlements, in virtue of which the plaintiffs clamed, said they had sold their right to David Jones, and required that he should be cited to defend it.
Before this answer, to which oath was made in november, 1789, was filed, David Jones was no party to the suit, and for some time instead of claiming any title derived from the representatives of David Rogers, had confederated with the plaintiffs in opposition to that title, which was adverse to his own right by settlement, or derived from the indiana company, stated before, but his purchase of that title since from the other defendents did neither vitiate his present right, because he was not bound, by any general praeeept of justice, or by a particular compact, to admit the plaintiffs to participation of the benefits of the purchase, nor render his title to the litigated lands better than the title of those from whom he purchased, because he had notice of the clames which the plaintiffs at that time were endeavouring to assert, and never had abandoned.
The plaintiffs apprised of the purchase by David Jones, finding that the.reby, from a syntagonist with them, he was become the only party against whom they must finaly have redress, and whose changes of sides, they seem improperly to have thought a perfidious tergiversation, filed a bill against him. if he were a lite pendente purchaser, this bill was unnecessary, because, without being made a party, he would have been made subject to a decree against the other defendents.
Great part of 1he answer to this bill by the defendent David Jones is the history of his procedings in the character of agent for the indiana company, which is unimportant; for he did not state that he derived his title from the company, nor explane what their title was. in the remaining part of the answer he chiefly relied, upon the priority of settlement by men from whom David Rogers claimed.
By the examinations of witnesses which, although taken before David Jones was made a defendent, might regularly be *read against him; if he were, as he is presumed (a) to have been, a lite pendente purchaser, the priority of settlement by men whose titles the plaintiffs have appeared to the court of equity, at the hearing in may, 1792, to be proven.
If that fact had not been proven, and if the evidence of priority had seemed otherwise equilibrious, which was thought to be more than the defendents could plausibly allege, the court allowed actual possession of the plaintiffs, at the time of location by David Rogers of his warrant, to preponderate, and presumed, in conforming with the maxim in aequali jure potior est conditio possidentis, the right by settlement to be in the plaintiffs.
Upon this proof or presumption : whether the owner of a military warrant could lawfully locate the warrant upon land in pos *168 session of another who had settled upon it before the year 1779, and deprived him thereof? was the question, which the H. C. C. determined on the side of the settler, for reasons stated in the case between Maze and Hamiltons, decreeing accordingly.
The court of appeals, in november, 1793, reversed the decree, (b) first, because the examinations of witnesses, on behalf of the plaintiffs, to prove the priority of their settlements, ought not to have been read against the defendent David Jones, who was not a party at the time the examinations were taken; and secondly, that court were of opinion unanimously, that a settlement gave no right to lands, in law or equity before the act of 1799, and was then to operate upon mere waste land, not to defeat any clame of a citizen to lands under surveys established by that act.*
REMARKS.
1.Upon the rejection of the examinations.
1. The court of appeals, in delivering their opinion, stated that the plaintiffs replied to the answer of the defendents John *Jeremiah Jacob and Mary his wife, took out commissions, and examined the witnesses on notice to Jacob and wife; insinuating, that after that answer, disclosing the purchase by Jones, the witnesses were examined, but the transcript, then before that court, shews the witnesses, to prove the priority of settlement on behalf of the plaintiffs, to have been examined before those defendents had sworn to their answer, and before David Jones was formaly made a party.
2. When no exception to reading examinations appeareth to have been taken, at the hearing, before the inferior court, the superior court, upon an 'appeal, may properly, as is conceived, presume the reading of the examinations to have been unexceptionable.
3. Perhaps the examinations ought not to have been rejected, if the exception had been taken before the inferior court: for if the defendent David Jones were a lite pendente purchaser, the examinations, unquestionably, might be regularly read against him.
4. If he do not appear to have been a lite pendente purchaser, there being good reason to presume him to have been such a purchaser in this case, ought the decree, on the ground of examinations having been improperly read against the defend-ent David Jones, to have been reversed against the defendent John Jeremiah Jacob and Mary his wife? and ought the reversal and dismission of the bill, upon the same ground, to have been absolute, as to the defendent David Jones? ought not the dismission to have been without prejudice? in which case the plaintiffs might have carried their decree against Jacob and his wife into execution, -even against the de-fendent David Jones, unless he shewed himself not to have been a lite pendente purchaser.
S.The possession of the plaintiffs, at the time of the survey by David Rogers, a fact admitted, is sufficient presumptive proof, as hath been observed, of a prior settlement by them, until the contrary be proved by the other party, which is not pretended to have been done.
But if proofs of prior settlements by the plaintiffs were incontestable, they would not avale: for
II. That court have resolved, that a settlement gave no right in law or equity before 1779. upon which to the remarks made in the case between Maze and Hamiltons shall be here added only, that the right by settlement, which the general assembly solemnly adopted, dignifying it with the emphatical appellation of property, now appeareth to have been a property from which any man, with a military warrant, might extrude the proprietor; and that the military man, with his warrant, was a more terrific ^invader than a company, with their order for council; for the latter were obliged to let the settler keep the land upon payment of a certain price; but the military man plundered, without permitting the settler to ransome; who, in the anguish of soul, felt by one forced to yield up that, which toil expense and danger in the acquirement, amelioration and preservation had endeared to him, could only bewail his misfortune in some such terms perhaps as — dulcia linquimus arva, and mutter to himself
Impius haec tarn culta novalia miles habebit?

 Presumed, because, 1, tie doth not shew when he became a purchaser, nor even allege the purchase to have been prior to the institution of the plaintiffs demand by filing their original bill, and, a, he was confessedly for some time a contederate with them in opposing the title of David Rogers.— Note in edition of 1795.

 The decree of reversal doth not explane the reasons of it; hut that they are here truly stated unquestionable authority can he produced to shew.* —Note in edition of 1795.

[*The appeal is .reported in 1 Wash. 230; and decides, that a right by settlement in the crown lands, could not be acquired until the act of 1779; and this act only gives to settlers a preference in lands at that time waste and unappropriated, and which had not before that time been located under warrants. See Maze and Hamilton and Reid v. Burnsides, in this volume. — Ed.]—Note in edition of 1852.